## Commonwealth ex rel. Flick, Appellant, *v.* Flick.

Argued June 9, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*William F. Sullivan, Jr.,* with him *Obermayer, Rebmann, Maxwell & Hippel,* for appellant.

*Donald S. Guthrie,* with him *Jones, Purdy & Guthrie,* for appellee.

OPINION BY HOFFMAN, J., September 11, 1969:

This case involves the duty of a father to finance his son's college education.

The parties are divorced parents of five children who range in age from eleven to eighteen years. An initial support order of $550 for the children was entered in 1964 after a partial hearing, upon agreement of the parties. In 1965 the order was raised to $600.00 per month on petition of the wife.

In 1968, the lower court, on petition of the father, vacated the support order as to the eighteen year old son and reduced the order from $600.00 per month for

five children to $400.00 per month for the remaining four.

We do not here consider the decision of the court in reducing the support. Its finding that there was a change in circumstances is supportable by testimony from the record.

The lower court erred, however, in failing to continue the order providing for the son's college education.

The applicable standard to be applied in these cases was set forth in *Commonwealth ex rel. Rice v. Rice,* 206 Pa. Superior Ct. 393, 213 A. 2d 179 (1965). "In the absence of an agreement to educate, a father has no duty to aid in providing a college education for his child no matter how deserving, willing and able that child may be unless he has sufficient estate, earning capacity, or income to enable him to do so without undue hardship."

At the support hearing the father did not contend that a contribution towards his son's education would work undue hardship upon him. To the contrary, he testified that he "would like to support him in college directly to the best of my ability . . ."

Similarly, the lower court did not find that the father was unable to assist in the son's education. Rather, it justifies the reduction of the award on the ground that "Respondent also desires to finance his son's college education directly, rather than have that son remain on the order which we have granted."

The lower court abdicated its responsibility to determine the extent to which the father was able to support his son without undue hardship and gave him free rein to make that determination independently and free from any binding obligation of the court.

Our court has noted in the past the lack of wisdom in relying on voluntary payments as, "There is no guar-

antee that these contributions will be continued." *Commonwealth ex rel. Kreiner v. Scheidt,* 183 Pa. Superior Ct. 277, 281, 131 A. 2d 147 (1957).

When a court finds that a father has sufficient estate to pay for support, it should not step back and allow the parent to decide how much should be paid. Such indecision only serves to exacerbate an already aggravated situation. The positive aspect of a support order is that it is backed up by the authority of our courts.

This case is remanded to the lower court so that it may set an amount which the father must pay toward his son's college education. In such manner, much future disagreement between the parties may well be avoided.

Case remanded.

WRIGHT, P. J., and WATKINS, J., would affirm on the opinion of Judge CATANIA.